IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 22-cv-01013-CNS

MICHAEL LINDENTHALER,

    Petitioner,

v.

WARDEN SIOBHAN BURLOW, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

    A state-court jury found Michael Lindenthaler guilty of seven counts of sexual assault on a child, eight counts of sexual assault on a child by one in a position of trust, and one count of sexual assault on a child as part of a pattern of abuse. The trial court sentenced him to a cumulative term of 24 years to life imprisonment. Mr. Lindenthaler brings this habeas corpus action under 28 U.S.C. § 2254 to challenge the legality of the conviction and sentence. The Colorado Court of Appeals (CCA) was the last state court to decide the merits of the claims Mr. Lindenthaler asserts here. Because the CCA did not contradict or unreasonably apply Supreme Court precedent in rejecting Mr. Lindenthaler's claims, the Court denies the habeas application.

**I.    STANDARDS OF REVIEW**

    "The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)). It is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Mr. Lindenthaler bears the burden to make these showings under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Mr. Lindenthaler is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.   STATE PROCEEDINGS

### A.  Trial and direct appeal.

In addressing Petitioner's direct appeal, the CCA summarized the evidence presented at trial as follows:

> When the victim was nine years old, a neighbor asked the victim about sexualized play that she was engaging in with the neighbor's young boys. The neighbor asked the victim where she was learning "this stuff," and the victim replied, "My dad." The victim subsequently disclosed an ongoing series of sexual assaults inflicted on her by her "dad" and her mother.
>
> The neighbor called the police, who responded, took statements, and arrested both the victim's mother and her "dad," who is the defendant here.1 As the police were arresting defendant, he stated: "I was not the only one that did anything to [the victim]. [The victim's mother] did, too."

2

> Once at the police station, defendant volunteered that he wanted to make a statement and cooperate in the investigation. He then waived his Miranda rights and took part in a lengthy, video recorded interview, which was later admitted at trial. Defendant admitted to sexually assaulting the victim on numerous occasions, including both vaginal and oral sex; however, he stated that she "wanted it," and he told her "no," but she would "scream[] at the top of her lungs," "it was all on her," and "a lot of stuff was on [the victim] because she was always screaming."
>
> Defendant and the victim's mother were charged with numerous crimes. The victim's mother pled guilty to sexually assaulting the victim, but defendant pled not guilty and went to trial.
>
> At trial, nine people testified: the neighbor, the two police officers who responded to the scene, the police officer who conducted the video recorded interview at the police station, the Denver Human Services emergency response case worker, the victim's mother, the forensic interviewer who conducted the video recorded interview of the victim, an expert in child sex assault disclosure, and the victim.
>
> The jury convicted defendant of sixteen of the eighteen counts, and defendant was sentenced to twenty-four years to life imprisonment.

(ECF No. 12-3 at 2-4). The CCA affirmed Mr. Lindenthaler's convictions on direct appeal (ECF No. 12-3). The Colorado Supreme Court denied certiorari. (ECF No. 12-4).

### B. First postconviction motion and appeal.

Mr. Lindenthaler then sought postconviction relief under Colo. R. Crim. P. 35(c), which was denied by the state district court in a written order, without a hearing. (ECF No. 12-8 at 2-3). The CCA reversed the trial court in part and remanded Mr. Lindenthaler's claim that his "trial counsel was ineffective for failing to meaningfully advise him regarding a plea deal offered by the prosecution" for an evidentiary hearing. (*Id.*). On remand, in 2017, the postconviction court held an evidentiary hearing and ultimately found trial "counsel's advisement was objectively reasonable based on the standard of practice at the relevant time" and "found no evidence to corroborate defendant's assertion that he would have taken the plea deal if he had been perfectly

3

advised, and thus found no prejudice." (*Id.* at 5). Therefore, the postconviction court denied Mr. Lindenthaler's ineffective assistance of counsel claim. (*Id.* at 5-11). The CCA affirmed the denial of postconviction relief in 2019, and the Colorado Supreme Court denied certiorari. (*Id.* at 11; ECF No. 12-11).

### III.   FEDERAL HABEAS PROCEEDINGS

After the state proceedings ended, Petitioner brought this habeas corpus action on April 26, 2022. (ECF No. 1). The parties were then ordered to address the procedural defenses of timeliness and exhaustion of state remedies. (ECF No. 6). Respondents filed a *Pre-Answer Response*, conceding that Petitioner's claims were timely and exhausted. (ECF No. 12). Accordingly, Respondents were ordered to file an answer addressing the merits of Claims 1-3, with Petitioner ordered to file a reply. (ECF No. 17). The claims are now fully briefed. (ECF Nos. 26, 27). As such, the Court will review the merits of the following claims:

1. Petitioner's conviction was obtained in violation of the Sixth and Fourteenth Amendments when the state trial court failed to sustain his challenge for cause to potential Juror C (ECF No. 1 at 8-10);
2. Petitioner's conviction was obtained in violation of the Fifth, Sixth and Fourteenth Amendments as a result of the prosecutor's misconduct during closing arguments (*id.* at 11-12); and
3. Petitioner's conviction was obtained in violation of the Sixth Amendment right to effective assistance of counsel when trial counsel advised him not to accept the offered plea deal (*id.* at 12-13).

In the *Answer*, Respondents contend the CCA's resolution of each claim was not

4

contrary to, or an unreasonable application of, clearly established federal law—barring habeas relief under § 2254(d)(1). (*See* ECF No. 26). Nor were, Respondents continue, any of the CCA's decisions based on unreasonable factual findings, making relief unavailable under § 2254(d)(2). (*Id.*). In reply, Mr. Lindenthaler maintains the state criminal proceedings violated his constitutional rights, requiring habeas relief. (*See* ECF No. 27). The Court will now discuss each claim.

## IV.  DISCUSSION

### A.  Claim 1: Denial of the right to an impartial jury.

Mr. Lindenthaler first claims that he was denied the right to a fair trial based on the state court's denial of a for-cause challenge to potential Juror C. (ECF No. 1 at 8-10; ECF No. 27 at 1-4). In Mr. Lindenthaler's view, the combination of Juror C's "raising her hand" during *voir dire* when the trial judge asked whether any of the prospective jurors would wonder why he did not testify during trial, and the subsequent exchange between the trial judge and Juror C where the trial judge explained that the "defendant is never compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way," deprived him of an impartial jury. (*Id.;* ECF No. 12-3 at 24-25). The Court will recount why the CCA rejected the claim, and then address whether § 2254 provides any basis for habeas relief.

*1. CCA's rejection of the claim.*

The CCA first recounted the relevant facts that occurred during jury selection:

> Defendant challenged Juror C for cause because she raised her hand when asked during voir dire whether, if defendant did not testify, any of the prospective jurors would wonder why he did not testify. The trial court then engaged in the following colloquy with Juror C.
>
> > COURT: A number of you indicated that you might have some

5

concern if Mr. Lindenthaler chose not to testify. The question is, if you would presume that he is guilty because he chooses not to testify and would think that if he doesn't testify he must have something to hide and, therefore, you would find him guilty based not on the totality of the evidence but on the fact that he did not testify. [Juror C]?

JUROR C: Can you repeat that?

COURT: A number of you indicated that you would have difficulty if Mr. Lindenthaler chose not to testify. The question is whether you will presume that he's guilty and not afford him the presumption of innocence based upon the fact that he chooses not to testify?

JUROR C: No.

COURT: No what?

JUROR C: No, I wouldn't presume him to be guilty because I'm sure there would be other -- beside him testifying there will be other evidence to prove him innocent or guilty.

COURT: All right. Well -- okay, so let me take that a step further. You understand that the defense is not under any obligation to present evidence that proves he's not guilty, it's Miss Conboy's [the prosecutor's] job to present evidence that proves that he is guilty? You're not following?

JUROR C: Not really.

COURT: The question is -- okay, two separate issues here whether or not Mr. Lindenthaler chooses to testify. You're fine with him not testifying if there's other evidence?

(Whereupon, the prospective juror nodded her head in the affirmative.)

COURT: You're fine with him not testifying, period?

JUROR C: Yes.

COURT: Whether he does or not is something that he and Mr. Stuart [defense counsel] decide amongst themselves?

JUROR C: Yes.

> COURT: Okay. Now, the second thing you said is that you're sure that there would be other evidence to prove his innocence?
>
> JUROR C: Not sure, but --
>
> COURT: You would expect that there would be other evidence to prove his innocence?
>
> JUROR C: Right.
>
> COURT: So my response to that is they don't have to present any evidence at all to prove his innocence, the burden is completely on Miss Conboy to prove that he's guilty. And if they don't present evidence to you sufficient to prove his guilt to you beyond a reasonable doubt then you have to find him not guilty, he doesn't have to prove that he's innocent.
>
> JUROR C: I'm a little confused on that.
>
> COURT: Miss Conboy has to prove that he did it.
>
> JUROR: Right.
>
> COURT: Mr. Lindenthaler doesn't have to prove that he didn't do it. Is that making it any better?
>
> JUROR C: Do I understand that?
>
> COURT: Well, yeah.
>
> JUROR C: Yes, I do understand that.
>                             *    *    *
> COURT: Let me read you the instruction that I read you earlier today. The defendant is never compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way. [Juror C], can you follow that instruction?
>
> JUROR C: Yes.
>
> The trial court then denied defendant's challenge for cause to Juror C, and defendant used a peremptory challenge to remove the juror. Defendant exhausted all his remaining peremptory challenges.

(ECF No. 12-3 at 22-25). The CCA then set forth the controlling legal standards and

7

concluded that the trial court acted within its discretion in denying Mr. Lindenthaler's for-cause challenge to Juror C:

> The trial court did not abuse its discretion in denying defendant's challenge for cause to Juror C because the juror's responses provided a basis for the court's determining that the juror would render an impartial verdict according to the court's instructions of law. *See Gurule*, 628 P.2d at 102. Juror C expressed confusion regarding the burden of proof in criminal trials; however, upon further questioning and explanation, she indicated that she understood it. She also indicated that she would follow the instruction stating that a defendant's decision not to testify cannot be used as an inference of guilt and should not prejudice him in any way.
>
> Moreover, as noted by our supreme court, "[i]t is not unusual for a juror to be confused or uncertain about the presumption of innocence because it is a difficult legal concept," *Young*, 16 P.3d at 825, yet if "the court is satisfied that the potential juror will render a fair and impartial verdict according to the law and to the evidence submitted at trial, that person should not be disqualified." *People v. Sandoval*, 733 P.2d 319, 320 (Colo. 1987).
>
> We also reject defendant's argument that the trial court's denial of his challenge for cause is erroneous under the reasoning of the special concurrence in *Merrow*, 181 P.3d at 323 (Webb, J., concurring). The concurring judge discussed situations where a trial court rehabilitates a prospective juror who has a "strong preconceived bias." *Merrow*, 181 P.3d at 323 ("In sum, a trial judge who subjects a prospective juror with a strong preconceived bias to a barrage of leading questions creates a record that is problematic on appellate review. Excusing that prospective juror does not."). There is no indication of such a bias here.

(*Id.* at 27-28).

    2.  *Application of § 2254.*

Respondents answer that AEDPA bars relief because the CCA's rejection of this claim was not contrary to, or an unreasonable application of, binding Supreme Court precedent. (ECF No. 26 at 14-17). The Court agrees with Respondents.

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury—a guarantee that was clearly established at the time Mr. Lindenthaler's conviction

became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Skilling v. United States*, 561 U.S. 358, 377 (2010). The key question is "whether the jurors had such fixed opinions that they could not judge impartially the guilt of the defendant." *Mu'Min v. Virginia*, 500 U.S. 415, 430 (1991). Yet "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling*, 561 U.S. at 386. "Jury selection, [the Supreme Court has] repeatedly emphasized, is particularly within the province of the trial judge." *Id.* (internal quotation marks omitted). "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Id.*

      The CCA's rejection of this claim was not unreasonable. In response to a *voir dire* question about Mr. Lindenthaler's decision to testify or not testify at trial, Juror C initially expressed confusion about the burden of proof in a criminal trial. However, upon the trial court's further inquiry and explanation, Juror C indicated that she understood that Mr. Lindenthaler does not have to prove he did not commit a crime and that the prosecution must prove Mr. Lindenthaler committed the crime. Juror C then confirmed that she could follow the trial court's instruction explaining the burden of proof. These findings are supported by the state-court record. (ECF No. 25, March 30, 2009, Trial Tr. at 173-177). More than that, Juror C never sat on the empaneled jury—Mr. Lindenthaler used a peremptory challenge to remove her. Even if Mr. Lindenthaler had to use a peremptory challenge to achieve the goal of an impartial jury, he does not present a federal constitutional violation. *Ross v. Oklahoma*, 487 U.S. 81, 88, (1988) ("We have

long recognized that peremptory challenges are not of constitutional dimension."); *see also Rivera v. Illinois*, 556 U.S. 148, 157 (2009) ("If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern."). Mr. Lindenthaler therefore fails to demonstrate the CCA's decision was contrary to, or an unreasonable application of, clearly established federal law. And the CCA's factual findings are supported by the record. As such, habeas relief is not available under §§ 2254(d)(1) or (2).

In the *Reply*, Mr. Lindenthaler requests an "amendment" to this claim "to reflect new information that [he] discovered" upon reviewing the trial transcript of jury selection (ECF No. 27 at 3). Mr. Lindenthaler appears to contend that though his counsel excused potential Juror C by exercising a peremptory challenge, she was somehow "left on the jury panel." (*Id.* at 3-4). To the extent Mr. Lindenthaler is attempting to assert a new habeas claim raised for the first time in his *Reply*, the Court declines to consider it in this proceeding. *See Windsor v. Patton*, 623 F. App'x 943, 947 (10th Cir. 2015) (citing *United States v. Sanchez*, 446 F. App'x 149, 150 (10th Cir. 2010)); *Thompkins v. McKune*, 433 F. App'x 652, 659 (10th Cir. 2011) ("raising an issue for the first time in a reply brief or traverse is insufficient to preserve it.").

### B. Claim 2: Prosecutorial Misconduct.

In his second claim, Mr. Lindenthaler insists the trial court erred in allowing the prosecutor to make improper comments during the rebuttal closing argument about the victim's mother and, by extension, deprived him of the right to a fair trial. (ECF No. 1 at 11-12; ECF No. 27 at 5). Mr. Lindenthaler contends the prosecutor's statement—that

the victim's mother was not offered "any kind of benefit" by testifying at Mr. Lindenthaler's trial—was false and that she "clearly received both charging and sentencing concessions." (*Id.*).

Respondents disagree. They argue that the CCA's rejection of the claim did not run afoul of federal law or § 2254(d)(1). (ECF No. 26 at 21-22). The Court will set forth the CCA's resolution, and then discuss whether the requirements of § 2254 have been met.

1. *CCA's resolution.*

A. Relevant Facts

During defendant's closing argument, defense counsel stated:

> There's basically three sources of evidence the prosecution has brought to you[:] [the victim's] statement, [defendant's] statement, and [the victim's mother's] statement. Let's start with [the victim's mother's] statement. I suggest to you that you need to just throw that out the window. That you cannot believe anything that [the victim's mother] told you. She is an unreliable witness.
>
> When [the victim's mother] got upon the stand I'm sure you saw that she couldn't wait to agree with everything the prosecution was saying. She even stepped over the prosecution's words to say yes every time a question was asked. And why is that? [The victim's mother] got sentenced five years to life. She may never get out of prison. And what was she trying to do? What was she trying to accomplish? She knows that her only chance to get out is that hopefully if she makes the prosecutor happy maybe she might get probation. She might be able to get out.

In the prosecution's rebuttal argument, the prosecutor stated:

> [The victim's mother] is not on trial. Throw [the victim's mother's] statement out of the window, why would you do that? It is more corroboration. You may not like her. She may not be mother of the year, I'll give you that. She may not be the most high functioning individual. But what she's telling you is powerful corroboration of what you heard from [the victim]

> and what you also heard from the defendant himself. Why would you ever throw that evidence out? He wants you to blame [the victim] in this case, but she's not on trial.
>
> As to her bias, she didn't even know what a motion for reconsideration is. And she talks about -- how many times did she say the community will release me. She's not putting that on my lap. And there is not a shred of evidence I offered her any kind of benefit or to the contrary. She took her chances, pled guilty and got sentenced to the Department of Corrections without any benefit from the office of the district attorney. There is no bias here.
>
> \* \* \*
>
> D. Analysis
>
> Here, the prosecutor's statement that the victim's mother "took her chances, pled guilty and got sentenced to the Department of Corrections without any benefit from the office of the district attorney" was not improper. Although the victim's mother accepted a plea bargain, nothing in the record suggests that she was sentenced with some benefit from the district attorney's office. Thus, nothing indicates that the prosecutor's statement was untrue.
>
> Moreover, the prosecutor made the statement in direct response to defense counsel's opening salvo that the victim's mother's testimony was unreliable because "[s]he knows that her only chance to get out [of prison] is that hopefully if she makes the prosecutor happy maybe she might get probation" and "[s]he might be able to get out." Thus, the prosecution acted within its considerable latitude in replying to the argument made by opposing counsel. See id.
>
> Because the challenged statement was not improper, the trial court did not err. *See People v. Merchant*, 983 P.2d 108, 115 (Colo. App. 1999).

(ECF No. 12-3 at 29-32).

    2.  *Application of § 2254.*

There is no basis for habeas relief on this claim. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The controlling Supreme Court decision is *Darden v. Wainwright*, 477 U.S. 168 (1986). *See also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). *Darden* held that a

prosecutor's improper comments violate the Constitution when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (cite and quotation omitted). To determine whether prosecutorial misconduct rendered the trial fundamentally unfair the Court must consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Moreover, prosecutors have "considerable latitude" to respond to an argument of opposing counsel. *United States v. Herron*, 432 F.3d 1127, 1136 (10th Cir. 2005).

The CCA's rejection of Mr. Lindenthaler's prosecutorial misconduct claim was reasonable pursuant to the holding in *Darden*. The CCA found the challenged comment that the victim's mother "took her chances, plead guilty and got sentenced . . . without any benefit from the office of the district attorney" was both proper and supported by record evidence. Indeed, though the record reflects that the victim's mother agreed to a plea bargain, there was no evidence that she received some type of leniency in exchange for her guilty plea. Further, the prosecutor's statement was made in response to comments made by defense counsel in his closing argument attempting to discredit the victim's mother's testimony. Given the prosecutor's latitude to respond to such credibility arguments in his rebuttal closing argument, coupled with the fact that there was no record evidence to rebut the accuracy of the statement, the challenged statement pales in comparison to the inflammatory statements made by the prosecutor

in *Darden*. There, the prosecutor said the defendant was an "animal;" that "[h]e shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash;" that the prosecutor wished he could see the defendant "with no face, blown away by a shotgun." *Darden*, 562 U.S. at 180 n.11 and 12. Those statements by a prosecutor did not warrant habeas relief; the prosecutor's statement here likewise does not. At a minimum, the state appellate court's ruling was not an unreasonable application of existing law. *Richter*, 562 U.S. at 103. Thus, Mr. Lindenthaler fails to demonstrate the state court's decision was so far afield as to meet the requirements of § 2254(d)(1).

Nor does Mr. Lindenthaler establish that the state court's rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). Mr. Lindenthaler's reply makes several general claims of jury "persuasion" and that the jury "probably" assumed he was guilty since his "co-defendant plead guilty and testified against him," but it does not cite a single example to support the conclusory arguments. (ECF No. 27 at 5). As such, he fails to overcome the presumption that the state court's factual findings were correct. 28 U.S.C. § 2254(e)(1). Therefore, habeas relief is not warranted on this claim.

### C.  Claim 3: Ineffective assistance of trial counsel.

Mr. Lindenthaler's third claim seeks habeas relief by arguing that trial counsel's advice during plea negotiations violated his Sixth Amendment right to effective assistance of counsel. (ECF No. 1 at 12-13). Specifically, Mr. Lindenthaler says he rejected a plea offer of an "indeterminate sentence [of] 4-10 years to life, i.e. a sentence which would have made him eligible for probation" based on counsel's incorrect advice

that the "facts of the case rendered probation highly unlikely. . . ." (*Id.*; ECF No. 27 at 6-7). The Court will set forth the CCA's resolution of the claim, and then discuss whether the requirements of § 2254 have been met.

1. *CCA's resolution.*

The CCA denied this claim, finding Petitioner failed to establish prejudice under *Strickland*. First, the CCA made factual findings based on the evidentiary hearing held before the postconviction court and then analyzed those facts pursuant to *Strickland*:

> On remand in 2017, the postconviction court heard testimony from defendant, from each of his parents, and from his trial counsel regarding the prosecution's plea offer in 2008. The court also considered one exhibit: a memo from counsel regarding a phone conversation with defendant in early 2009, before his trial.
>
> Postconviction counsel argued that defendant was never advised of the offer, but if he was, it was not an adequate advisement. The court found that defendant's parents' testimony was biased and that defendant's testimony was not credible. Although trial counsel could not recollect the details of his plea discussions with defendant, and the memo served as the only written record of such discussions, the court found trial counsel's testimony regarding his standard practices at the time to be credible.
>
> The court found that the prosecution had offered defendant a deal to plea to one class 3 felony, which would include an indeterminate sentence and would make defendant probation eligible. The offer, as communicated to defendant, would carry a sentence of four years to life. Trial counsel advised defendant not to take the deal because the facts of the case rendered probation highly unlikely; in his substantial experience and based on standard practice at the time, indeterminate sentences were equivalent to life sentences because very few convicts under the Colorado Sex Offender Lifetime Supervision Act of 1998 were being granted parole; and defendant would have "at least . . . a shot" of a better outcome if he went to trial. And by going to trial, defendant preserved his opportunity for a direct appeal.
>
> The court found that counsel's advisement was objectively reasonable based on the standard of practice at the relevant time. It further found no evidence to corroborate defendant's assertion that he would have taken the plea deal if he had been perfectly advised, and thus found no prejudice. Because it found that defendant had not established that his counsel's performance was deficient, or that he had suffered prejudiced as a result,

the court denied his motion. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

On appeal, defendant contends that the postconviction court erred because it misapplied the law from *Strickland*. We disagree.

### II. Legal Authority and Standard of Review

To prevail on an ineffective assistance of counsel claim, a defendant must show both that his counsel's performance was constitutionally deficient and that the performance caused prejudice. *Id*. at 687. We defer to the district court's factual findings underlying these two prongs, but independently review the court's ultimate determination regarding performance and prejudice. *Carmichael v. People*, 206 P.3d 800, 807-08 (Colo. 2009); *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007).

To establish deficient performance in the plea negotiation context, a defendant must show that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). An attorney's failure to present his client with the opportunity to make a reasonably informed decision whether to accept a plea offer is deficient. *Carmichael*, 206 P.3d at 806; *see also Lafler v. Cooper*, 566 U.S. 156 (2012) (where parties conceded that defendant's decision to go to trial rather than accept a plea deal resulted from ineffective advice regarding plea offer).

To establish *Strickland* prejudice in the context of the rejection of a plea offer, a defendant must show that but for the inadequate representation, there is a reasonable probability that "he would have accepted the plea offer rather than go[] to trial." *Carmichael*, 206 P.3d at 807. *But see People v. Delgado*, 2019 COA 55, ¶ 22 ("The [United States Supreme] Court [in *Lafler and Missouri v. Frye*, 566 U.S. 134 (2012),] requires more from a defendant than does *Carmichael* — specifically, that the defendant show a reasonable probability that the prosecution wouldn't have withdrawn the offer and that the court would have accepted it (at least in states [including Colorado] where prosecutors and courts retain such discretion)."). To demonstrate a reasonable probability, a defendant must do more than simply testify that "he would have accepted the plea offer." *Carmichael*, 206 P.3d at 807. Rather, the defendant must produce some objective corroborating evidence to support the contention that he would have accepted the plea offer if properly and adequately represented. *See id.*

### III. Discussion

### A. Deficient Performance

Defendant argues that his trial counsel's representation fell below an objective standard of reasonableness, and the postconviction court incorrectly found otherwise. Specifically, he asserts that his counsel's performance was deficient because (1) a ten year to life sentence under the plea deal would have been better than any "shot" he had at trial; (2) the infrequency of parole from indeterminate sentences at the time of defendant's trial could have changed in the future; and (3) he might have accepted responsibility for his actions by the time he would have been eligible for parole under the plea deal. We are not persuaded.

First, defendant acknowledged at the remand hearing that the low end of his sentencing range under the plea deal could have been twenty-four years. That is the same lower end sentence he received after trial. And as to the top end, any prison sentence, regardless of a plea, would have been indeterminate. Second, we defer to trial counsel's advice in light of "counsel's perspective at the time," without consideration of what may happen in the future. *See Ardolino*, 69 P.3d at 76.

Considering counsel's reasonable perspective on the unlikelihood of probation or parole under the plea, we agree with the postconviction court that counsel's advice fell within the wide range of reasonable professional assistance. *See id.* And, as the communication was described in defendant's Rule 35(c) motion, we conclude that trial counsel presented his client with the opportunity to make a reasonably informed decision whether to accept the plea offer. *See Carmichael*, 206 P.3d at 806.

Defendant did not show that his counsel's performance was deficient under *Strickland*.

### B. Prejudice

Even if trial counsel's advisement was deficient, we would affirm the postconviction court's order because we agree that defendant failed to present objective corroborating evidence that he would have accepted the plea offer with a proper advisement. *See id*. at 807.

With record support, the postconviction court found that defendant knew his codefendant had accepted a deal and would be testifying against him; that defendant had not discussed the plea offer with his very involved parents; and that defendant denied he was responsible for the sexual contact. *See Lafler*, 566 U.S. at 171 ("[A] court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions."). On these bases, the court found that defendant would not have taken the offered plea. We agree.

We are not persuaded that trial counsel's memo, which states that

17

> defendant "brought up the [plea offer] where he could get probation" is evidence that he was "actively pursuing a plea deal." Nor are we swayed that defendant's relative sentencing exposure corroborates his assertion, given that defendant may have been sentenced to twenty-four years to life under the plea and that he was likely to receive an indeterminate sentence both under the plea and after trial.
>
> For these reasons, we conclude defendant did not demonstrate a reasonable probability that he would have accepted the plea offer. *See Carmichael*, 206 P.3d at 807. Moreover, defendant did not show a reasonable probability that the prosecution would not have withdrawn the offer and that the court would have accepted it. *See Delgado*, ¶ 22. Defendant did not meet the prejudice prong of *Strickland*.

(ECF No. 12-8 at 4-11).

### 2. Relief under § 2254.

The CCA's decision was not contrary to, or an unreasonable application of, *Strickland*. As the CCA explained, trial counsel did not perform deficiently. The record lacks any objective corroborating evidence that Mr. Lindenthaler would have accepted the plea offer with a proper advisement or that the prosecution would not have withdrawn the offer and that the court would have agreed to it. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (explaining that prejudice in the context of a rejected plea bargain requires a defendant to show that "there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), and that the court would have accepted its terms."). On top of that, the CCA found Mr. Lindenthaler failed to show prejudice because: (1) he knew the victim's mother would be testifying against him; (2) he denied responsibility for the sexual contact; and (3) he was aware that the plea deal carried a potential 24-years to life sentence (the same lower end sentence he received following the trial).

18

The CCA's findings of fact must be presumed correct in the absence of clear and convincing evidence to the contrary. Mr. Lindenthaler does not present clear and convincing evidence to rebut the presumption of correctness under § 2254(e)(1). *See also Baertschy*, 764 F. App'x at 736 (concluding that habeas petitioner's failure to rebut state court's credibility determination regarding alleged ineffective assistance "dooms any claim in these proceedings that [petitioner] was prejudiced by [counsel's] deficient performance. What this case comes down to is a clear case of buyer's remorse, which does not entitle [petitioner] to relief."). Consequently, the requirements for habeas relief have not been met under §§ 2254(d)(1) or (2), and this claim will be denied.

## V.  CONCLUSION

Ultimately, Mr. Lindenthaler points to nothing from the state criminal proceedings that qualifies as the sort of extreme malfunction in the state criminal justice system that § 2254 guards against. *See Richter*, 562 U.S. at 102.

The Court therefore

ORDERS that the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (ECF No. 1) be **denied** and this case **dismissed with prejudice**; and

FURTHER ORDERS that a certificate of appealability pursuant to 28 U.S.C. § 2253(c) will not issue because Mr. Lindenthaler has not made a substantial showing of the denial of a constitutional right.

Dated this 18th day of April 2023.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge